UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

LORRAINE GARCIA,

    Plaintiff,

v.   Civ. No. 20-381 GJF

KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's "Motion to Remand or Reverse Agency Decision" [ECF 22] ("Motion") and her accompanying "Memorandum in Support of Plaintiff's Motion to Remand or Reverse" [ECF 23]. The Motion is fully briefed. ECF 27 (Response); ECF 28 (Reply). Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** the Motion, and **DISMISS** this case **WITH PREJUDICE**.

### I.   BACKGROUND

Lorraine Garcia ("Plaintiff") was born in 1965. Administrative Record ("AR") at 60. Plaintiff completed schooling through the 11th grade. *Id.* at 44. Plaintiff never took the General Educational Development Test (commonly known as the GED). *Id.* For approximately eleven years, Plaintiff worked full-time caring for senior citizens (i.e., running errands and performing household chores). *Id.* at 46, 217, 262. In September 2016, Plaintiff applied for a period of disability and disability insurance benefits and for supplemental security income. *Id.* at 15, 60–81, 172–87. Plaintiff alleged that she became disabled on January 1, 2016, due to a combination of post-traumatic stress disorder, tendonitis, depression, anxiety, stress, "trouble sleeping," and a

fibrocystic lump in her right breast. *Id.* at 60–61. After Plaintiff allegedly became disabled, she lived with her adult son, who is employed, and continued to provide in-home services to senior citizens on a part-time basis. *Id.* at 49.

After her disability applications were denied initially and on reconsideration, *id.* at 60–114, Plaintiff requested a hearing before an administrative law judge ("ALJ"). *Id.* at 129–30. Following the hearing, ALJ Deirdre Dexter found that, although Plaintiff was incapable of performing her past relevant work, she could perform jobs "that exist in significant numbers in the national economy." *Id.* at 23–25. Specifically, the ALJ found that Plaintiff could perform the representative occupations of mail clerk, bottling line attendant, and laundry sorter. *Id.* at 24. Consequently, the ALJ concluded that Plaintiff was not disabled. *Id.* at 25. Plaintiff appealed the decision to the Appeals Council, which "found no reason under [its] rules to review the [ALJ's] decision" and thus denied Plaintiff's request for review on February 27, 2020. *Id.* at 1, 170–71. Plaintiff then timely filed the instant action in this Court on April 23, 2020. ECF 1; AR at 3 (advising Plaintiff that she had 60 days from the date of receiving the Appeals Council's decision letter to file a civil action challenging the ALJ's decision).

## II.  PLAINTIFF'S ARGUMENTS

Plaintiff argues that the ALJ erred at step five of the sequential evaluation process by finding that Plaintiff could work jobs that existed in significant numbers in the national economy. ECF 23 at 7–13. Plaintiff contends that the ALJ erred with respect to finding that Plaintiff could work either as a mail clerk or bottling line attendant because the duties required by those jobs conflicted with the ALJ's findings on Plaintiff's ability to perform certain work-related tasks. ECF 23 at 7–11. With those two positions excluded, Plaintiff insists that the remaining occupation identified by the ALJ (laundry sorter) did not exist in significant numbers in the national economy,

an essential component of the ALJ's "not disabled" finding. *Id.* at 11–13. Accordingly, Plaintiff says, the ALJ's errors at step five were harmful and reversible. *Id.*

## III. APPLICABLE LAW

### A. Harmless Error

The Court's review of an ALJ's decision is both legal and factual. *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)) And the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g).

In this case, however, the Court's review is grounded not by the substantial evidence standard but instead by harmless error analysis. The Tenth Circuit has "generally recognized the applicability of" harmless review in "social security disability cases." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). Indeed, "certain technical errors" may be "minor enough not to undermine confidence in the determination" of this case. *Id.* (quoting *Gay v. Sullivan*, 986 F.2d 1136, 1341 n.3 (10th Cir. 1993)). Harmless error is applied "cautiously in the administrative review setting." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). It is, however, sometimes "appropriate to supply a missing dispositive finding under the rubric of harmless error in the right exceptional circumstances, i.e., where, based on material the ALJ did at least consider (just not properly)," the Court can "confidently say that no reasonable administrative factfinder, following

the correct analysis, could have resolved the factual matter in any other way." *Allen*, 357 F.3d at 1145.

### B. Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 416.920). The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "he is not presently engaged in substantial gainful activity," (2) that "he has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment or (4) that "the impairment or combination of impairments prevents him from performing his past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of his age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146 n.5.

**IV. THE ALJ'S DECISION AND FINDINGS**

The ALJ found that although Plaintiff could not perform her past relevant work, she could perform jobs that existed in significant numbers in the national economy. AR at 24–25. The ALJ therefore denied both of Plaintiff's applications, finding her not disabled at step five. *Id.*

**A. Steps One Through Three**

At step one, the ALJ found that Plaintiff had not "engaged in substantial gainful activity since" her alleged onset date. AR at 17.[1] At step two, the ALJ decided that Plaintiff was severely impaired by her "generalized anxiety disorder, panic disorder, post-traumatic stress disorder (PTSD), osteoarthritis of the right hand and fingers, and borderline intellectual functioning." *Id.* At step three, the ALJ concluded that Plaintiff did not "have an impairment or combination of impairments that [met] or medically equal[ed] the severity" of a listed impairment. *Id.* at 19.[2]

**B. Step Four**[3]

"After careful consideration of the entire record," the ALJ found that Plaintiff had the residual functional capacity ("RFC")[4] to:

> lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; able to sit up to six hours in an eight-hour workday; able to stand and/or walk up to six hours in an eight-hour workday; able to frequently handle or finger with the right, dominant upper extremity; able to perform simple, routine tasks; able to make

---

[1] The ALJ also found that Plaintiff met the insured status requirements of the "Social Security Act through December 21, 2023," AR at 17, which was required for Plaintiff to have a viable claim for disability insurance benefits. *See* 42 U.S.C. § 423(c)(1).

[2] "Listed impairments" refer to certain impairments identified in the regulations. 20 C.F.R. § 404.1520(d). When the SSA finds that any of a claimant's impairments meets or medically equals one of those "listed impairments," the SSA will find the claimant disabled without considering the claimant's "age, education, and work experience." *Id.*

[3] The Tenth Circuit has described step four of the sequential evaluation process as consisting of three distinct phases. *Winfrey*, 92 F.3d at 1023. In phase one, the ALJ evaluates a claimant's physical and mental RFC. *Id.* In phase two, the ALJ assesses the physical and mental demands of the claimant's past relevant work. *Id.* Last, the ALJ applies the phase one findings to the phase two findings to determine whether, given the claimant's RFC, she could meet the physical and/or mental demands of her past relevant work. *Id.*

[4] The RFC describes the most a claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1).

5

> simple work-related decisions; able to sustain attention & concentration for up to two hours at a time while performing simple, routine work-related tasks; able to sustain the mental demands associated with performing simple, routine tasks throughout an ordinary workday and work week; able to interact with supervisors as needed to receive work instructions; able to work in proximity to co-workers but job should not require close communication or cooperat[ion] with co-workers in order to complete work tasks; job should not involve working with the general public; able to adapt to forewarned changes in a low stress work environment; job should not require an inflexible work pace or strict production quotas; and job should not involve travel to unfamiliar places.

AR at 19–20. Based on this RFC, the ALJ determined that Plaintiff could not perform her past relevant work as a companion. *Id.* at 22–23.[5] The ALJ therefore proceeded to step five to determine whether Plaintiff could perform jobs that exist in significant numbers in the national economy. *Id.* at 24.

### C. Step Five

Vocational expert Marsha Heald testified at the hearing. AR at 50. Heald had twenty "years' experience working with individuals who have employment needs" and ten years' experience "helping individuals who have more intense needs through supportive employment." *Id.* The ALJ asked Heald to consider

> a hypothetical individual of the same age and education as [Plaintiff] ... assume that this hypothetical individual is able to lift, carry, push or pull up to 10 pounds frequently and 20 pounds occasionally; is able to sit up to 6 hours in an 8-hour workday; is able to stand and/or walk up to 6 hours in an 8-hour workday. This individual is able to frequently handle or finger with the right dominant upper extremity; is able to perform simple/routine tasks; is able to make simple/work-related decisions; is able to sustain attention and concentration for up to two hours at a time while performing simple/routine/work-related decisions; is able to sustain attention and concentration for up to two hours at a time while performing simple/routine/work-related tasks; is able to sustain the mental demands associated with performing simple/routine tasks throughout and ordinary workday and work week. Is able to interact with supervisors as needed to receive work instructions; is

---

[5] A "companion" "[c]ares for elderly, handicapped, or convalescent persons: Attends to employer's personal needs ... Transacts social or business affairs … Reads aloud, plays cards, or other games to entertain employer. Accompanies employer on trips and outings. May prepare and serve meals to employer." DOT 309.677-010 COMPANION, 1991 WL 672667.

>able to work in proximity to co-workers, but the job should not require close communication or cooperation with co-workers in order to complete work tasks. The job should not involve working with the general public. This individual is able to adapt to forewarned changes in a low-stress work environment. The job should not require an inflexible work pace or strict production quotas. The job should not involve travel to unfamiliar places.

*Id.* at 53–54.

Heald testified that the hypothetical individual could perform "work in the national economy." *Id.* at 53. In support, Heald opined that the hypothetical individual could work representative occupations such as "mail clerk" (100,000 jobs in the national economy),[6] "bottling line attendant" (45,000 jobs in the national economy),[7] and "laundry sorter" (75,000 jobs in the national economy).[8] AR at 53–54.

The ALJ expressed reservations about whether the hypothetical individual could perform two of these jobs. First, the ALJ inquired whether the individual's mental limitations would preclude her from working as a mail clerk. AR at 24. Heald confirmed that the hypothetical individual could perform the duties required of a mail clerk, including working in an office building, separating mail, and delivering mail to departments in the building. *Id.* Second, the ALJ

---

[6] A mail clerk "[s]orts incoming mail for distribution and dispatches outgoing mail; Opens envelopes by hand or machine. Stamps date and time of receipt on incoming mail. Sorts mail according to destination and type, such as returned letters, adjustments, bills, orders, and payments. Readdresses undeliverable mail bearing incomplete or incorrect address. Examines outgoing mail for appearance and seals envelopes by hand or machine. Stamps outgoing mail by hand or with postage meter. May fold letters or circulars and insert envelopes ... may distribute and collect mail. May weigh mail to determine that postage is correct. May keep record of registered mail. May address mail, using addressing machine." DOT 209.687-026 MAIL CLERK, 1991 WL 671813.

[7] A bottling line attendant "[p]repares filled whiskey bottles for packing and shipping, performing any combination of following duties: Pastes labels and tax stamps on filled whiskey bottles as bottles pass on conveyor. Examines bottles to ascertain that labels and stamps have been correctly applied. Straightens labels and stamps on bottles. Presses stamps on necks of bottles. Wipes excess glue and moisture from bottles. Packs whiskey bottles into cartons. Pastes identification labels on cartons." DOT 920.687-042 BOTTLING-LINE ATTENDANT, 1991 WL 687971.

[8] A laundry sorter "[s]orts laundry into lots, such as flatwork, starchwork, and colored articles prior to washing or ironing: Places sorted articles in bins, nets, or baskets, or onto conveyor belt. May weigh flatwork and record weight on laundry ticket. May affix customer's identification mark on articles or fasten identifying pin to nets." DOT 361.687-014, 1991 WL 672991.

asked whether the duties of a bottling line attendant conflicted with the hypothetical individual's limitation against "strict production quotas." *Id.* at 55. Heald advised that the job was a quality control position that would not involve a quota "per se." *Id.* Relying on Heald's assurances, the ALJ found that her testimony was consistent with the Dictionary of Occupational Titles. *Id.* at 25. The ALJ found that Plaintiff could perform the above-mentioned representative occupations and that those occupations existed in significant numbers in the national economy. *Id.*[9] The ALJ concluded, therefore, that Plaintiff was not disabled under the Social Security Act. *Id.*

## V.    ANY ERROR COMMITTED BY THE ALJ AT STEP FIVE WAS HARMLESS

Plaintiff argues that the ALJ committed reversible error at step five. First, she contends that the ALJ erred by finding that Plaintiff could work as a bottling line attendant because (1) the job requires a strict production quota, which conflicts with the ALJ's finding that Plaintiff cannot work an occupation "with an inflexible work pace or strict production quota[]" and (2) bottling line attendant jobs do not exist where Plaintiff lives. ECF 23 at 8–9. Second, Plaintiff claims that the ALJ erred by finding that Plaintiff could work as a mail clerk because (1) the job requires a strict production quota and (2) the job requires a reasoning level of three, which conflicts with the ALJ's finding that Plaintiff is limited to performing simple and routine tasks. *Id.* at 10–11. Accordingly, Plaintiff insists that the ALJ's decision must be remanded because the remaining job of laundry sorter does not exist in significant numbers in the national economy as is required for a finding of "not disabled" at step five. *Id.* at 11–13; *see also* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant

---

[9] The ALJ did not make individual findings as to whether each of the representative occupations alone existed in significant numbers in the national economy. *See* AR at 24–25. Her finding instead appears to have referred to the three jobs in combination *Id.*

is not disabled if she can engage in "work that exists in *significant numbers*" in the "national economy" (emphasis added)).

In its discretion, the Court does not consider it necessary to decide either of Plaintiff's first two arguments. For the following reasons, even assuming that the ALJ erred in finding that Plaintiff could serve as a mail clerk or bottling line attendant, the Court considers such errors to have been harmless. The Court holds that the position of the laundry sorter—a position to which Plaintiff does not otherwise object—exists in sufficiently significant numbers in the national economy.

### A. Step Five Harmless Error Analysis

"Assuming there was a conflict between the [vocational expert's] testimony and the DOT, the ALJ's failure to resolve the alleged conflict [is] harmless error" if the remaining non-conflicting job "exist[s] in significant numbers" and "no reasonable factfinder" could have found otherwise. *Anderson v. Colvin*, 514 F. App'x 756, 764 (10th Cir. 2013) (unpublished) (citing *Allen*, 357 F.3d at 1145); *see also* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant is not disabled if she can engage in "work that exists in significant numbers" in the "national economy"). Thus, in finding such an error to be harmless, a court must therefore "hold *as a matter of law*" that the number of jobs is "so large a number as to conclusively establish the requisite numerical significance." *Allen*, 357 F.3d at 1144–45 (emphasis in original).

In determining whether work "exists in significant numbers," it does not matter whether "[w]ork exists in the immediate area," "[a] specific job vacancy exists," or "[the claimant] would be hired if [he or she] applied." 20 C.F.R. § 404.1566(a). If, however, the work consists of only "*[i]solated* jobs that exist only in *very* limited numbers in relatively few locations," then the work does not exist in significant numbers. § 404.1566(b) (emphasis added); 42 U.S.C. § 423(d)(2)(A). The Tenth Circuit has "never drawn a bright line establishing the number of jobs necessary to

9

constitute a 'significant number.'" *Raymond v. Astrue*, 621 F.3d 1269, 1274 & n.2 (10th Cir. 2009) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)) (also noting its previous finding that "152,000 jobs in the national economy [was] sufficient" (citing *Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (unpublished)). The Tenth Circuit has even gone so far as to "impl[y] "that 11,000 national jobs was a significant number." *Evans v. Colvin*, 640 F. App'x 731, 735 (10th Cir. 2016) (unpublished) (citing *Rogers v. Astrue*, 312 F. App'x 138, 142 (10th Cir. 2009) (unpublished) (concluding, in affirming a denial of attorney fees, that "the Commissioner was substantially justified in arguing that 18,831 remaining jobs in the national economy was sufficient for applying harmless error")). Moreover, the Ninth Circuit affirmed an ALJ's finding that 25,000 jobs satisfied the significance requirement, applying the substantial evidence standard of review. *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014).[10]

### B. Any Error the ALJ Committed at Step Five was Harmless Because the ALJ's Laundry Sorter Finding Was *Uncontested* and There Are a Significant Number of Laundry Sorter Jobs in the National Economy

Even assuming the ALJ erred in finding that Plaintiff could work as a mail clerk or a bottling line attendant, any such error was harmless. The harmless error doctrine will apply if the Court can conclude that no "reasonable factor finder could have determined" that laundry sorter jobs do not exist in significant numbers in the national economy. *See Stokes*, 274 F. App'x at 685 ("Thus, even if we consider only these two jobs out of the four considered by the ALJ, there were still 11,000 jobs available regionally and 152,000 jobs available nationally. Here, we do not believe

---

[10] *See also Tapia v. Saul*, Civ. No. 19-463 GJF, 2020 WL 2043533, at *8–9 (D.N.M. Apr. 28, 2020) (42,850 national jobs significant); *Santiago v. Saul*, Civ. No. 19-523 GJF, 2020 WL 2840342, at *7–8 (D.N.M. June 1, 2020) (11,800 national jobs significant); *King v. Berryhill*, No. 16-1147 KBM, 2018 WL 851358, *12–15 (D.N.M. Feb. 12, 2018) (47,500 national jobs significant); *Padilla v. Berryhill*, No. 16-106 KK, 2017 WL 3412089, at *11–12 (D.N.M. Mar. 28, 2017) (27,000 national jobs significant).

any reasonable factfinder could have determined that suitable jobs did not exist in significant numbers.").

Although the Tenth Circuit has yet to define the number of jobs that qualifies as "significant," the Court holds that 75,000 jobs in the national economy is comfortably significant. As noted above, the Tenth Circuit has implied that 11,000 national jobs were significant, *Evans*, 640 F. App'x. at 735, the Ninth Circuit has held that 25,000 national jobs were significant, *Gutierrez*, 740 F.3d at 528–29, and *this* Court has previously held that 42,850 national jobs were significant, *Tapia*, 2020 WL 2043533 at 8–9. Based on those and other prior holdings, the Court holds, "as a matter of law," *Allen*, 357 F.3d at 1144–45, that 75,000 jobs are significant.[11] *See Anderson*, 514 F. App'x at 764 (holding that an alleged "conflict between the VE's testimony and the DOT" was harmless because the number of uncontested jobs was significant and thus "no reasonable factfinder could have resolved the matter any other way" (citing *Allen*, 357 F.3d at 1145)). The Court therefore concludes that to the extent the ALJ may have erred with respect to the mail clerk or bottling line attendant positions, any such error was harmless because the remaining job—laundry sorter—existed in significant numbers in the national economy.

Plaintiff insists that—because "at least 152,000 jobs" were not identified—the ALJ was required to apply the factors described in *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992), before finding that the number of jobs Plaintiff could work were "significant." ECF 23 at 11-12

---

[11] Many courts have adopted this approach, holding that an alleged error an ALJ made at step five was harmless if the remaining uncontested job(s) existed in significant numbers in the national economy. Notably, these courts have even considered a similar (or a smaller) number of national jobs to be "significant"—even though the ALJs had not originally relied on such a number for their findings of significance. *See, e.g., Valdez v. Commissioner of Social Security*, 808 F. App'x 1005, 1010 (11th Cir. 2020) (unpublished) (78,000 jobs in the national economy); *Collins v. Berryhill*, 743 F. App'x 21, 25 (7th Cir. 2018) (55,000 jobs in the national economy); *Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 793–94 (10th Cir. 2013) (unpublished) (80,000 jobs in the national economy); *Breslin v. Colvin*, Case No. CIV-15-100-SPS, 2016 WL 5408126, at *4 (E.D. Okla. Sept. 28, 2016) (54,000 jobs in the national economy); *Fox v. Calvin*, No. CIV-14-489-R, 2015 WL 5178414, at *4 (W.D. Okla. 2015) (32,000 jobs in the national economy).

(quoting *Halford v. Saul*, CV 19-0413 JHR, 2020 WL 3832986, at *1 (D.N.M. July 7, 2020)). The Court disagrees. In *Trimiar*, the Tenth Circuit declined to establish a "bright line establishing a number of jobs necessary to constitute a 'significant number,'" and instead held that the requisite number of jobs "should be evaluated" on a case by case basis, applying a certain set of factors. 966 F.2d at 1331.[12] Later, in *Raymond v. Astrue*, 621 F.3d 1269, 1274 n.2 (10th Cir. 2009), the Tenth Circuit clarified that an ALJ need not apply the factors identified in *Trimiar* if the number of jobs at issue is "much larger" than the 900 or so jobs originally at dispute in *Trimiar*. Although the Tenth Circuit acknowledged that it had previously assumed "152,000 jobs in the national economy [to be] sufficient," *id.* (citing *Stokes*, 274 F. App'x at 684), the court did not hold that a *Trimiar* analysis must be conducted if the number of identified jobs is less than 152,000. *Id*. Indeed, *nothing* in the Tenth Circuit's precedent establishes such a rule and imposing such a rule would be to take Tenth Circuit guidance well beyond where the Tenth Circuit itself has taken it. Furthermore, the analysis in *Trimiar* hinged on an assessment of the number of relevant jobs in the Oklahoma economy as opposed to the national economy. 966 F.2d at 1330. Thus, when it comes to reviewing the number of jobs in the *national economy*, district courts derive more guidance from *Raymond* than they should from *Trimiar*.

Other judges in this district, including the undersigned, have not required an ALJ to conduct a *Trimiar* analysis when the ALJ finds that Plaintiff can work jobs in the national economy that exist in a number less than 152,000. *See supra* note 10. This Court worries that such a mechanical rule would undermine the very purpose of the harmless error doctrine, which is to avoid remand

---

[12] These factors include: the level of a claimant's disability; the reliability of the vocational expert's testimony; the distance a claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. *Trimiar*, 966 F.2d at 1330 (quoting *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988)).

where doing so would achieve the same result. *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error may be harmless; we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result." (citing *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)). Because this Court concludes that all reasonable factfinders would consider 75,000 jobs in the national economy to be sufficient, the Court holds that the ALJ did not err by omitting consideration of the *Trimiar* factors.

## VI.  CONCLUSION

For the foregoing reasons, the Court holds that, to the extent the ALJ may have erred by finding that Plaintiff could work as a mail clerk or a bottling line attendant, any such error was harmless.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, Plaintiff's Motion is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*